**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROLAND DAVID and AVIGDOR MOCHE,<br><br>                    Plaintiffs,<br><br>       v.<br><br>HUMAN GENOME SCIENCES, INC., H. THOMAS WATKINS, ARGERIS N. KARABELAS, and GLAXOSMITHKLINE PLC<br><br>                    Defendants. | Case No. _____ |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR A TEMPORARY
RESTRAINING ORDER PURSUANT TO FED. R. CIV. P. 65(b)**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD............................................................................................ 4

III.    STATEMENT OF THE FACTS ......................................................................... 4

      A.    Background to the Tender Offer .......................................................................... 4

      B.    The Rush to Conclude the Tender Offer .............................................................. 5

IV.  ARGUMENT......................................................................................................... 6

      A.    Plaintiffs are Likely to Succeed on the Merits ...................................................... 6

      B.    Irreparable Harm Will Result if the Tender Offer Expires on July 27, 2012 ......... 9

      C.    There is No Harm to Defendants in Granting the TRO, Which Serves the
            Public Interest .................................................................................................... 10

      D.    At Most Only Nominal Bond is Necessary Here................................................. 10

V.      CONCLUSION................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Nytronics, Inc.,* 312 F. Supp. 519, 526 (S.D.N.Y. 1970) ........................................... 8

*Bally Gaming Int'l v. Alliance Gaming Corp.*, 1995 U.S. Dist. LEXIS 14485 (D. Del. Sept. 29, 1995) ................................................................................................................................. 7, 8

*Bolger v. First State Financial Services*, 759 F. Supp. 182, 197 (D.N.J. 1991) ............................ 8

*Camelot Industries Corp. v. Vista Resources, Inc.*, 535 F. Supp. 1174, 1184-85 (S.D.N.Y. 1982) ............................................................................................................................................ 8

*Caruso v. Metex Corp.*, 1992 U.S. Dist. LEXIS 14556 (E.D.N.Y. July 30, 1992) ........................ 8

*Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-920 (3d Cir. Pa. 1974) .......................................................................................................... 7

*In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ....................................... 3

*Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) .... 11

*NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) .......................... 5

*Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1394 (D.D.C. 1984) ..................... 10

*Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010)* ................................. 12

**Other Authorities**

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2954, at 292-93 (2d ed. 1995) .......................................................................................................................................... 12

17 CFR 240.14d-4(c) ...................................................................................................................... 9

Fed. R. Civ. P. 65(b) ................................................................................................................. 1, 12

Fed. R. Civ. P. 65(c) ...................................................................................................................... 3

Interpretive Release Relating to Tender Offer Rules, 52 Fed. Reg. 11458, (1987) .................... 7, 9

Securities Exchange Act of 1934 .................................................................................................. 9

Plaintiffs Roland David and Avigdor Moche ("Plaintiffs"), by and through their attorneys, respectfully move this Court, through the instant motion and brief, for a temporary restraining order ("TRO") pursuant to Fed. R. Civ. P. 65(b) enjoining the July 27, 2012, expiration of a Tender Offer (the "Tender Offer"), which GlaxoSmithKline plc ("GSK"), through its wholly-owned subsidiary H. Acquisition Corp ("H Corp."), would acquire Human Genome Sciences, Inc. ("HGS" or the "Company") for approximately $3.6 billion. Plaintiffs requests that the expiration of the Tender Offer be enjoined to allow the Company's shareholders sufficient time to fully digest significant material disclosures that HGS caused to be filed with the Securities and Exchange Commission ("SEC") on July 16, 2012 and July 19, 2012.

## I. INTRODUCTION

The above-captioned action (the "Action") is a shareholder class action brought on behalf of the shareholders of HGS against the Company, GSK, and certain of the Company's officers and directors (collectively, "Defendants"),[1] arising out of Defendants' attempt to sell the Company to GSK (the "Proposed Acquisition") without providing adequate time for shareholders to analyze two sets of material disclosures that Defendants released, for the first time, a mere nine and six business days before the expiration of the Tender Offer, respectively.

In an effort to bypass Federal law designed to require informed shareholder participation in the Tender Offer, Defendants are attempting to consummate the Proposed Acquisition in record time. If permitted, this will result in the sale of a $3.6 billion corporation before shareholders have had any meaningful chance to review critical material disclosures by Defendants. In fact, not even the final price of the Tender Offer was released until July 16, 2012. However, Defendants then waited an additional three days to release additional material

---

[1] The "Individual Defendants" are H. Thomas Watkins (President and CEO of HGS) and Argeris N. Karabelas (Chairman of the HGS Board).

information regarding the Tender Offer, including crucial information regarding the sales process and the valuation work performed by HGS's two financial advisors Credit Suisse Securities (USA) LLC and Goldman Sachs & Co. However, Defendants failed to adjust the expiration of the Tender Offer to account for the delay in releasing these disclosures to shareholders.

On May 10, 2012, GSK launched a hostile Tender Offer for HGS at $13.00 per share. At the time, the Company opposed the Tender Offer and provided financial advisor support for its position. On July 16, 2012, after an increase in the offer price to $14.25 per share, the Company reversed course and Defendants announced that they had entered into the Merger Agreement contemplating the sale of HGS to GSK. This is, by definition, a new offer necessitating, under Federal law, that Company shareholders be provided with a minimum of 20 business days to consider the new offer. However, Defendants instead seek to consummate the transaction in a mere eight calendar or six business days following the July 19, 2012 release of material information regarding the Proposed Acquisition, including new financial opinions that appeared in the approximately 80 page Amendment Number 12 to its Schedule 14D-9, filed with the SEC (the "July 19 Disclosure"). Defendants did not extend the expiration of the Tender Offer following the release of the voluminous new information contained in the July 19 Disclosure. Shareholders cannot reasonably be expected to digest these significant disclosures in the six business days that Defendants have arbitrarily scheduled.

In light of this unexplained and unjustifiable rush to consummate this transaction by July 27, 2012, Plaintiffs requests that the Court issue a TRO to prevent the expiration of the Tender Offer from taking place until shareholders have had time to take Defendants' disclosures into account in deciding whether to tender, sell, or hold their Company shares. Plaintiffs have field

the requisite verified complaint in support of this motion for a TRO. *See* Fed. R. Civ. P. 65(b)(1)(a)

Plaintiffs satisfy the legal requirements for obtaining a TRO of the expiration of the Tender Offer. First, Plaintiffs are likely to succeed on the merits of its claims. Defendants have violated Federal securities laws by attempting to consummate the Tender Offer in an impermissibly short time period. Without an extension of the Tender Offer, shareholders will be deprived of their right to make a fully informed decision regarding their shares. Thus, it is likely that Plaintiffs will ultimately succeed in demonstrating that Defendants are violating Federal securities laws by arbitrarily setting the expiration of the Tender Offer for July 27, 2012.

Second, Plaintiffs and other shareholders will be irreparably harmed if they are not given a fair opportunity to make an informed decision regarding the Tender Offer. Indeed, courts have typically found a threat of irreparable harm to exist when shareholders are required to make important decisions on inadequate information. *See e.g.*, *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected. An injunctive remedy of that nature specifically vindicates the stockholder right at issue - the right to receive fair disclosure of the material facts necessary to cast a fully informed vote - in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.") Moreover, if the merger is consummated, Plaintiffs will have no real and adequate remedy to rescind the transaction. Monetary damages, which would be speculative at best, are highly unlikely to make Plaintiffs whole for damages that they will have suffered.

Third, the balance of equities strongly favors granting the temporary restraining order. Shareholders simply cannot process the volume of crucial information (including two complicated financial analyses) that Defendants have released in the extremely brief window of time that Defendants have contemplated. Denying Plaintiffs additional time to process Defendants' disclosures is neither fair nor just. Defendants, in contrast, will suffer little, if any, harm from the granting of a TRO delaying the expiration of the Tender Offer for eight additional business days. Indeed, the Tender Offer commenced, albeit at a lower price, in May 2012. Defendants have advanced no arguments in support of the need for the merger to close a mere six business days following the disclosure of material information regarding the deal and its fairness to shareholders. Any minimal harm in delaying the expiration of the Tender Offer (if indeed there is any) is far outweighed by the greater good that will be realized from allowing shareholder adequate time to consider Defendants' July 16, 2012 and July 19, 2012 disclosures.

## II. LEGAL STANDARD

The elements of a preliminary injunction and a TRO are identical. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). A temporary restraining order or a preliminary injunction should only be granted if "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-MarEnterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III. STATEMENT OF THE FACTS

### A. Background to the Tender Offer

Defendant HGS is a biopharmaceutical company incorporated in Delaware. The Company manufactures multiple protein and antibody drugs for use in research, clinical and

commercial activities. It produces and purifies these protein and antibody drugs in three process development and manufacturing facilities.

Defendant GSK is global healthcare group, which is engaged in the creation and discovery, development, manufacture and marketing of pharmaceutical products, including vaccines, over-the-counter medicines and health-related consumer products. GSK is listed on the New York Stock Exchange.

On the morning of April 11, 2012, Andrew Witty, Chief Executive Officer of GSK, telephoned Thomas Watkins, President and Chief Executive Officer of HGS, and made an unsolicited proposal on behalf of GSK to acquire all of the Company's shares at a price of $13.00 per share in cash. On the morning of April 19, 2012, Mr. Watkins called Mr. Witty to inform him that the Board had carefully evaluated GSK's unsolicited proposal and determined that the offer at $13.00 per share did not reflect the value inherent in HGS.

On May 10, 2012, GSK, through H. Corp., launched the unsolicited Tender Offer to acquire shares of common stock of HGS for $13.00 per share in cash. On May 17, 2012, HGS filed its initial Form 14D-9 with the SEC opposing the Tender Offer and including detailed arguments regarding its inadequacy, including "inadequacy opinions" from the Company's two financial advisors.

B.  **The Rush to Conclude the Tender Offer**

On the morning of July 16, 2012, HGS entered into a definitive agreement and plan of merger ("Merger Agreement") with GSK and H. Corp whereby GSK agreed to amend the Tender Offer. That same day, Defendants publicly filed the Merger Agreement with the SEC and announced that the Tender Offer would be expiring on July 27, 2012, a mere eleven days after the new deal was announced. Defendants inexplicably took an additional three days to

disclose key and material information regarding the sales process and value of the Company pursuant to the July 19 Disclosure. The merger is valued at approximately $3.6 billion.

## IV.  ARGUMENT

### A.  Plaintiffs are Likely to Succeed on the Merits

In considering an application for a TRO, courts "first consider whether the plaintiffs have shown 'a reasonable probability of eventual success in the litigation.'…[C]onsideration of this issue requires a review of the factual background of the case and of the legal theory upon which the plaintiffs rely." *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-920 (3d Cir. Pa. 1974).

Plaintiffs are likely to succeed on the merits in demonstrating that Defendants are violating the federal securities laws because Defendants have failed to provide shareholders with adequate time to digest Defendants' recent material disclosures regarding a new transaction. On very similar facts, this Court found that a plaintiff demonstrated a likelihood of success on Section 14(e) claims related to extension of a Tender Offer deadline and enjoined the expiration date of a Tender Offer for fifteen business days following the release of only 8 pages of new material information. *See Bally Gaming Int'l v. Alliance Gaming Corp.*, 1995 U.S. Dist. LEXIS 14485 (D. Del. Sept. 29, 1995). In *Bally*, a potential acquirer, BGII, filed a supplement to its Schedule 14D-1 Tender Offer statement on September 22, 1995, "amending the terms of the offer, providing supplemental information about, *inter alia*, BGII and Alliance, the source and amount of funds for the purchase, and Alliance's plans for Bally, and extending the closing date, previously set for September 29, 1995, until October 3, 1995." *Bally*, 1995 U.S. Dist. LEXIS 14485 at *6. The Court noted that "Disclosure and dissemination of material changes must allow security holders the opportunity effectively to consider such information and factor it into the decision whether to tender shares, withdraw shares already tendered, sell into the market, or hold

their shares." *Id.*, 1995 U.S. Dist. LEXIS 14485 at *20-*21 (*Citing* Interpretive Release Relating to Tender Offer Rules, 52 Fed. Reg. 11,458, 11,459-60 (1987)). The Court found that "because the defendants' September 22, 1995 supplement includes material changes in addition to changes in consideration and percent of shares sought, Bally shareholders must be afforded more time to evaluate the offer than the offer presently provides." *Id.*, 1995 U.S. Dist. LEXIS 14485 at *21-*22. Accordingly, the court ordered the "the closing date for defendants' Tender Offer postponed until a date 15 business days after September 22, 1995." *Id.*, 1995 U.S. Dist. LEXIS 14485 at *21-*22.

Courts have consistently noted that disclosures must arrive in time for shareholders to consider new information and act accordingly. "The value of a supplemental proxy statement is particularly questionable where the statement is issued shortly before a shareholders' vote, giving voters limited time to evaluate the corrected statements." *See Camelot Industries Corp. v. Vista Resources, Inc.*, 535 F. Supp. 1174, 1184-85 (S.D.N.Y. 1982) (ten day delay in shareholder meeting necessitated after supplemental proxy statement correcting errors in initial statement was filed about 20 days prior to meeting). *See Caruso v. Metex Corp.*, 1992 U.S. Dist. LEXIS 14556 (E.D.N.Y. July 30, 1992) (noting that "no court has ever held that a Supplemental Proxy Statement mailed merely seven days before the Proxy vote (four business days) furnishes a stockholder with sufficient notice to digest the information, and if necessary, change his vote"). On the other hand, a court upheld a Supplemental Proxy Statement released 13 days before an annual shareholders' meeting "in light of [the Supplemental Proxy Statement's] relatively straightforward, uncomplex nature." *Bolger v. First State Financial Services*, 759 F. Supp. 182, 197 (D.N.J. 1991). *See also Abramson v. Nytronics, Inc.,* 312 F. Supp. 519, 526 (S.D.N.Y.

1970) (fourteen days between annual meeting and an eight-page letter amending proxy materials were sufficient).

Furthermore, the significant changes to the terms of the Tender Offer necessitate providing shareholders with 20 business days to consider whether or not to tender their shares. The execution of the Merger Agreement fundamentally altered the complexion of the Tender Offer from hostile to friendly. Consequently, shareholders will be considering vastly different factors in weighting the merits of the Tender Offer. Accordingly, Rule 14e-l of the Securities Exchange Act of 1934 requires that the Tender Offer be left open for 20 business days following the July 16, 2012 announcement of the execution of the Merger Agreement.

The intent of the Securities and Exchange Commission likewise supports extending the expiration of the Tender Offer. "The Commission expressed the view that the minimum time period an offer must remain open following other material changes in the terms of the offer or information concerning the offer will depend on the facts and circumstances, including the degree of significance of the information and the appropriate manner of dissemination." Interpretive Release Relating to Tender Offer Rules, 52 Fed. Reg. 11458, (1987). "As a general rule, the Commission is of the view that to allow dissemination to shareholders 'in a manner reasonably designed to inform [them] of such change' (17 CFR 240.14d-4(c)), the offer should remain open for a minimum of five business days from the date that the material change is first published, sent or given to security holders. If material changes are made with respect to information that approaches the significance of price and share levels, a minimum period of ten business day may be required to allow for adequate dissemination and investor response. Moreover, the five business day period may not be sufficient where revised or additional materials are required because disclosure disseminated to security holders is found to be

materially deficient." *Id*. Here, the significant nature of the supplemental disclosures merits an extension beyond the "minimum" ten business days recommended by the commission in order for shareholders to be able to adequately consider the lengthy and substantial disclosures made by Defendants on July 16, 2012 and July 19, 2012.

        **B.**        **Irreparable Harm Will Result if the Tender Offer Expires on July 27, 2012**

Allowing the Tender Offer to expire on July 27, 2012 will result in irreparable harm to HGS's shareholders. Indeed, once the Proposed Acquisition is complete, it will be very difficult - if not outright - impossible to obtain a rescission of the transaction or receive adequate monetary damages. This is because the proposed $3.6 billion merger could be completed almost immediately following the expiration of the Tender Offer, provided that a sufficient number of shares have been tendered.

It is for this reason that courts have granted requests for temporary restraining orders where, as here, Defendants seek to deprive shareholders of their right to make an informed decision regarding whether or not to support a merger that will cash out their interest in the company. Accordingly, courts have granted a TRO where "proceeding with the vote would itself cause an irreparable injury to the shareholders who would be compelled to make a vital investment decision based on incomplete and materially misleading information." *Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1394 (D.D.C. 1984).

Moreover, the law is extraordinarily clear that damages do not provide an adequate remedy when shareholders are deprived of the opportunity to make an informed decision regarding their shares, which is alleged here. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) ("Monetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights. Nor can post-vote relief be considered an effective remedy."). Therefore, Plaintiffs and shareholders face the threat of

irreparable harm if they are forced to decide whether or not to tender their shares without being proved an adequate amount of time to make an informed determination regarding the Tender Offer.

### C. There is No Harm to Defendants in Granting the TRO, Which Serves the Public Interest

Defendants would not be adversely affected by the TRO, whereas Plaintiffs would face the irreparable harm discussed above. One clear indicator that the balance-of-equities favors Plaintiffs is the fact that the initial Tender Offer was commenced on May 10, 2012. Defendants have advanced no explanation as to why, on July 16, 2012, the Tender Offer would urgently need to be close on July 27, 2012. Such haste only serves to prejudice shareholders and, in light of the history of this Tender Offer, is completely unnecessary. Defendants would suffer no harm by extending the Tender Offer.

Finally, a preliminary injunction would serve the public interest by compelling Defendants to fulfill their legal duties. Plaintiffs seek to protect the rights of Company shareholders by preventing the unlawfully premature expiration of the Tender Offer. Plaintiffs also seeks to prevent the Tender Offer from expiring before shareholders have had an opportunity to consider all material information released by Defendants. The enforcement of the federal securities laws and the protection of shareholder rights are worthy aims.

### D. At Most Only Nominal Bond is Necessary Here

The Court has discretion to – and should – at most issue only a nominal bond in this case. Fed. R. Civ. P. 65(c) addresses the provision of security as a condition precedent to the granting of a TRO. Nonetheless, a court has the discretion to require only a nominal bond, if any. The amount of the bond is left to the district court's discretion. *Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010).* In addition, "it has been held that the court may dispense with

security altogether if the grant of an injunction carries no risk of monetary loss to the defendant." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2954, at 292-93 (2d ed. 1995).

Here, there is simply no reasonable possibility that Defendants will suffer any monetary damages as a result of postponing the expiration of the Tender Offer, which was initially commenced over two months ago. Given the length of time that the Tender Offer has been open, there is little chance that extending the Tender Offer would result in any harm for Defendants. There is also no threat that the deal will fall apart, as GSK was prepared to pursue this transaction unilaterally. The Court, therefore, should dispense with the requirement of the bond or, at most, require only a nominal bond from Plaintiffs.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant an Order enjoining, temporarily, the expiration of the Tender Offer until Plaintiffs have had sufficient time to adequately review the recently released disclosure documents issued in support of the Proposed Acquisition.

Dated: July 20, 2012　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**COOCH AND TAYLOR, P.A.**

　　　　　　　　　　　　　　　　　　　　By: */s/ Blake A. Bennett*
　　　　　　　　　　　　　　　　　　　　Blake A. Bennett (#5133)
　　　　　　　　　　　　　　　　　　　　The Brandywine Building
　　　　　　　　　　　　　　　　　　　　1000 West Street, 10th floor
　　　　　　　　　　　　　　　　　　　　P.O. Box 1680
　　　　　　　　　　　　　　　　　　　　Wilmington DE 19899-1680
　　　　　　　　　　　　　　　　　　　　(302) 984-3800
　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

OF COUNSEL:

**BLOCK & LEVITON LLP**
Jason M. Leviton
Mark A. Delaney
Steven P. Harte
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
(617) 398-5600

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**
Jeremy A. Lieberman
Jason S. Cowart
Gustavo F. Bruckner
Samuel J. Adams
Ofer Ganot
600 3rd Avenue, 20th Floor
New York, NY 10016
(212) 661-1100

**BRONSTEIN GEWIRTZ & GROSSMAN LLC**
Peretz Bronstein
60 East 42nd Street
New York, NY 10165
 (212) 697-6484