IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROLAND DAVID and AVIGDOR MOCHE,<br><br>    Plaintiffs,<br><br>v.<br><br>HUMAN GENOME SCIENCES, INC., H. THOMAS WATKINS, ARGERIS N. KARABELAS, and GLAXOSMITHKLINE PLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 12-965-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this 26th day of July, 2012, having reviewed plaintiffs' motion for a temporary restraining order and the papers filed in connection therewith, and having heard oral argument on same;

IT IS ORDERED that said motion (D.I. 3) is denied, for the reasons that follow:

1. **The parties.** Plaintiffs Roland David and Avigdor Moche ("plaintiffs") purportedly are security holders[1] of defendant Human Genome Sciences, Inc. ("HGSI"), a biopharmaceutical company incorporated in Delaware which manufactures multiple protein and antibody drugs for use in research, clinical and commercial activities. Defendants H. Thomas Watkins and Argeris N. Karabelas are members of the HGSI board of directors. Defendant GlaxoSmithKline plc ("GSK") is a global healthcare

---

[1] There is no information of record as to the number of shares plaintiffs own or when they acquired such shares.

group, engaged in the creation and discovery, development, manufacture and marketing of pharmaceutical products.

2. **Background.** The facts underlying the instant motion are not in dispute. In April 2012, GSK made an unsolicited offer for HGSI at $13 per share. After evaluating the offer, the HGSI board determined that it was inadequate, and rejected the overture. On May 10, 2012, GSK took its offer directly to HGSI's security holders by initiating a hostile tender offer at $13 per share. This tender offer was scheduled to close on June 7, 2012. On May 17, 2012, HGSI filed a Form 14D-9 Solicitation/Recommendation Statement (the "14D-9") with the Securities and Exchange Commission ("SEC"). The 14D-9 contained an explanation of the bases for its rejection of the GSK offer, and noted that HGSI's financial advisors had opined that $13 per share was inadequate from a financial point of view to HGSI's security holders.

3. On June 8, 2012, GSK extended its offer until June 29, 2012; on June 29, 2012, the offer was further extended until July 20, 2012. During this time, HGSI filed regular amendments to its 14D-9 in conformity with applicable law and, on the instructions of the HGSI board, management engaged its financial advisors to explore the availability of a transaction that reflected the full inherent value of HGSI. In this regard, 33 pharmaceutical and biotechnology companies were contacted to determine whether there was an interest in a transaction involving a sale of HGSI. At the conclusion of these inquiries, the HGSI board was informed that it was not likely that any of the previously contacted parties would make an alternative cash offer by the bid deadline.

4. Following the close of the market on July 13, 2012, GSK and HGSI engaged in negotiations over an increase in the GSK offer price. Agreement was reached at a price of $14.25 per share. After receiving the advice of its financial and legal advisors, the HGSI board voted to recommend the $14.25 per share tender offer as fair to HGSI's security holders.

5. At approximately 9:00 a.m. on July 16, 2012, HGSI and GSK issued a joint press release announcing that GSK had amended its initial offer to increase the price to $14.25 per share and had extended the expiration date to 12:00 midnight, New York City time, on July 27, 2012. In that press release, which was filed with the SEC that day as an amendment to the 14D-9, HGSI explained that its board had determined that the increased offer was in the best interests of the company and its security holders. On July 19, 2012, HGSI filed a further amendment to its 14D-9 ("the Supplement") containing its recommendation of the offer and its financial advisors' opinions that the price is fair from a financial point of view to HGSI's security holders. The price of the tender offer represents a 99% premium to HGSI's stock price on April 18, 2012, the last day of trading before HGSI publicly disclosed GSK's initial offer. The transaction represents a $3.5 billion deal in the aggregate.

6. **Standard of review.** Traditional rules of equity apply to requests for injunctive relief. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *Id.* The grant of a preliminary injunction is considered an "extraordinary remedy" that should be granted only in "limited circumstances." *See Kos Pharm., Inc.*

*v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted).

7. The moving party for injunctive relief must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* (citation omitted). The burden lies with the movant to establish every element in its favor or the grant of a preliminary injunction is inappropriate. *See P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). If either or both of the fundamental requirements – likelihood of success on the merits and probability of irreparable harm if relief is not granted – are absent, an injunction cannot issue. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

8. **Plaintiffs' contentions.** Plaintiffs filed the instant lawsuit and motion on July 20, 2012. In connection with their request for a temporary restraining order, it is important to note the limited scope of their accusations and request for relief. Plaintiffs do not accuse defendants of misleading HGSI's security holders by virtue of insufficient disclosures or inaccurate representations. Rather, plaintiffs contend that GSK's tender offer should be extended to give HGSI's security holders sufficient time to digest the new tender offer price and the 180 degree change in HGSI's position (from "do not tender" to "tender," from unfair to fair). Plaintiffs argue in this regard that the July 16 and July 19 disclosures should be treated as a new tender offer because the complexion of the tender offer was fundamentally altered when it changed from a

4

hostile to a friendly offer. (D.I. 4 at 8) A new tender offer must remain open for at least 20 business days, pursuant to Rule 14e-1 of the Securities Exchange Act of 1934, that is, until August 10 (from the July 16 disclosures) or August 15 (from the July 19 disclosures), 2012. 17 C.F.R. § 240.14e-1(a). Even if the court were to determine that the July 16 and July 19 disclosures should not be treated as a new tender offer, such disclosures should be regarded as material changes to the tender offer, thus allowing the court to exercise its equitable powers to extend the tender offer for a sufficient period of time to allow the HGSI security holders to take into account the new information in deciding whether to tender, sell, or hold their HGSI shares. See SEC Interpretive Release Relating to Tender Offer Rules, Release No. 34-24296, 52 Fed. Reg. 11,458 (April 9, 1987) ("the minimum time period an offer must remain open following other material changes in the terms of the offer or information concerning the offer will depend on the facts and circumstances, including the degree of significance of the information and the appropriate manner of dissemination.").

9. In sum, plaintiffs contend that defendants have violated federal securities laws by attempting to consummate the tender offer in an impermissibly short time period, depriving HGSI's security holders "of their right to make a fully informed decision regarding their shares." (D.I. 4 at 3) Irreparable harm should be presumed if security holders are forced to tender their shares without adequate information or time for reflection. (D.I. 14 at 12-13)

10. **Defendants' contentions.** Defendants argue that the July 16 and July 19 disclosures should not be characterized as a new tender offer but only a change in price. According to defendants, "a price change should precede the closing of a tender

5

offer by ten (10) business days and any other material change in the information provided to security holders should precede the closing of a tender offer by five (5) business days." (D.I. 6 at 6) The undisputed facts of record demonstrate that the notice of the increase in price from $13 to $14.25 per share was given to HGSI security holders before market opening on July 16, a full ten business days from the scheduled closing of the tender offer after market close on Friday, July 27, 2012. Therefore, the ten (10) business day tender offer rule has been satisfied. See 17 C.F.R. § 240.14e-1(b).[2] Moreover, the July 19, 2012 Supplement preceded the anticipated July 27, 2012 closing of the tender offer by more than six (6) business days, consistent with the SEC's guidance. See SEC Interpretive Release Relating to Tender Offer Rules, Release No. 34-24296, 52 Fed. Reg. 11,458 (Apr. 9, 1987) (an offer "should remain open for a minimum of five business days from the date that [a] material change is first published, sent or given to security holders.").

11. In sum, defendants contend that they followed the tender offer rules "just like a cookbook" (D.I. 14 at 18) and, therefore, plaintiffs cannot demonstrate a likelihood of success on the merits. Neither have plaintiffs demonstrated irreparable harm, as a violation of the Williams Act[3] "will not, by itself, justify the issuance of an injunction" in the absence of a showing of irreparable harm. See *Pennwalt Corp. v. Centaur Partners*, Civ. Nos. 88-5146, 88-9422, 1989 WL 11263, at *2 (E.D. Pa. Feb. 10, 1989).

---

[2]Under the tender offer rules, the day a price change is announced and the day the tender offer closes are included when computing time. 17 C.F.R. § 240.14d-1(g)(3).

[3]Williams Act, Pub. L. No. 90-439, 82 Stat. 454 (1968) (codified at 15 U.S.C. §§ 78m(d)-(e), 78n(d)-(f) (1970)), and regulations promulgated thereunder.

Plaintiffs' burden to show irreparable harm is a particularly heavy one in this case, where the terms of the merger agreement provide that: (a) if a majority of the shares are not tendered on the July 27, 2012 closing date, GSK is obligated to extend the offering period on the same terms of the offer currently outstanding; and (b) if a majority of shares are tendered, GSK has committed to effectuating a back-end merger that will afford remaining shareholders the same consideration for their shares as those who have tendered. (D.I. 7 at 4) Accordingly, no shareholder is being required or pressured to render a final decision on the tender offer by the closing date.

12. **Analysis.** Plaintiffs provide no authority for the proposition that either the July 16 or the July 19 disclosures constitute a new tender offer. *See Bally Gaming Int'l, Inc. v Alliance Gaming Corp.*, Civ. Nos. 95-538, 1995 WL 579643, at *7 (D. Del. Sept. 18, 1995). Moreover, there is no real dispute that defendants have complied with the technical requirements of the SEC's tender offer rules, albeit minimally. The only question, therefore, is whether the court should exercise its inherent equitable powers to extend the closing of the tender offer.

13. The tender offer rules promulgated under the Williams Act are designed to ensure that security holders have appropriate information about the terms of an offer and sufficient time to consider such information in deciding whether to tender, sell in the market, or hold their securities. *See Schrieber v. Burlington N. Inc.*, 472 U.S. 1, 8 (1985). Under the rules, a tender offer must be open for a minimum of twenty (20) business days, and material changes to the offer must be disclosed and disseminated in a manner reasonably designed to inform security holders of the change. *See* 17

C.F.R. § 240.14e-1.

14. Having canvassed the cases identified by the parties, two principles emerge. First, from the federal securities law standpoint, compliance with the regulations and interpretive guidelines promulgated by the SEC should be deemed adequate, absent materially deficient disclosures. *See, e.g., McDermott Inc. v. Wheelabrator-Frye, Inc.*, 649 F.2d 489, 492 (7th Cir. 1980). Second, from the corporation law standpoint, courts are loathe to interfere in the dynamics of market transactions (again, absent materially deficient disclosures) because of the "risk that security holders will lose the opportunity to cash in their investment at a substantial premium." *McMillan v. Intercargo Corp.*, Civ. No. 16963, 1999 WL 288128, at *5 (Del. Ch. May 3, 1999) (citing *Solash v. The Telex Corp.*, Civ. Nos. 9518, 9525, 9528, 1988 WL 3587 (Del. Ch. Jan. 19, 1988)).

15. Although the substance of defendants' disclosures have not been challenged, nevertheless, plaintiffs ask me to ignore both principles based primarily on my decision to extend the closing date of a tender offer in *Bally Gaming International, Inc. v. Alliance Gaming Corp.*, Civ. No. 95-538, 1995 WL 579643 (D. Del. Sept. 29, 1995). *Bally* is factually distinguishable, however, and I am not persuaded that its reasoning should be followed at bar. In *Bally*, there were allegations of material omissions and misrepresentations related to the solicitation of proxies authorizing, *inter alia*, the removal and replacement of four of the seven Bally directors and the repeal and amendment of certain corporate bylaws related to the pending tender offer and proposed merger. The supplemental disclosure in dispute, although not particularly

lengthy,[4] contained "extensive corrective disclosures" in addition to amending the terms of the offer. Where, as here, there is a single issue - an increase in the price offered by defendants - and nothing but speculation to support the proposition that HGSI's security holders[5] will have any difficulty digesting the reasoning behind management's change of heart, the imposition of a temporary restraining order is not warranted.

16. **Conclusion.** For the reasons stated, I find that plaintiffs have not carried their burden to prove either a likelihood of success on the merits or irreparable harm. Therefore, the pending motion for a temporary restraining order is denied.

*[signature]*
United States District Judge

---

[4] It is a sign of our litigious times that today, the single issue of a change in price (at issue) takes 80 pages to explain, while a host of issues could be explained (in *Bally*) with eight pages.

[5] Described by defendants at oral argument as primarily "institutions and arbitrageurs, many of whom purchased their shares on the news of the price increase" that followed the July 16, 2012 press release. (D.I. 14 at 16, 26)